

FILED

JUN 19 2020

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY               DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 19cr4139 JM |
|---|---|
| Plaintiff, | |
| v. | **ORDER ON MOTION TO MODIFY SENTENCE** |
| DIANA GARCIA-ZUNIGA, | |
| Defendant. | |

Defendant moves for compassionate release based primarily on the birth of her child, and her alleged ineligibility for Federal Bureau of Prisons' (BOP) programs, including home detention or placement at a Residential Reentry Center (RRC), based on alleged restrictions on transferring her from her current facility, a non-BOP facility, to a BOP facility as a result of the COVID-19 pandemic. (Doc. No. 51-1 ("Mot.").) For the below reasons, Defendant's motion for compassionate release is **GRANTED**.

On September 28, 2019, Defendant was arrested at the border between the United States and Mexico while riding as the passenger in a vehicle that was discovered by federal agents to contain illegal narcotics. (Doc. No. 1.) She was ordered to be released pending trial subject to a $10,000 bond. (Doc. No. 6.) On January 10, 2020, Defendant pled guilty to possession of methamphetamine with intent to distribute and was sentenced to 13 months

in BOP custody and three years of supervised release. (Doc. No. 36.) At the time of her sentence, Defendant was approximately seven months pregnant and the court "strongly" recommended Defendant for BOP's Mothers and Infants Nurturing Together (MINT) program. (*Id.* at 2.) On March 10, 2020, Defendant gave birth, but was not allowed to participate in the MINT program and was separated from her child. (Mot. at 1.) Defendant has served over 260 days in custody, mainly at GEO-Western Region Detention Facility ("GEO"), which is a "contract facility," not a BOP facility. (Mot. at 2.) Her expected release date is August 31, 2020. (*Id.*)

A district court may modify an existing term of imprisonment under 18 U.S.C. § 3582(c). The court may do so upon motion of either the BOP on behalf of a federal inmate or the inmate herself. § 3582(c)(1)(A). A court may rule on a motion filed by the inmate after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Both the Supreme Court and Ninth Circuit have instructed against requiring exhaustion of administrative remedies where it would be futile. *See, e.g., Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016); *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004) ("It is axiomatic that one need not exhaust administrative remedies that would be futile or impossible to exhaust.").

Here, the same reasoning applies to § 3582(c)(1)(A). Defendant was committed to BOP custody, (Doc. No. 36 at 2), but has apparently never been held in BOP custody, allegedly due to restrictions on transferring inmates stemming from the COVID-19 pandemic. (*See* Mot. at 3-4.) The Government does not dispute that GEO is not a BOP facility, and thus, GEO does not have a BOP warden to whom Defendant can appeal. Defendant nonetheless attempted to pursue an administrative remedy. On May 15, 2020, Defendant's counsel contacted BOP Senior Attorney Theresa Talplacido to inquire about Defendant's eligibility for home detention, to which Ms. Talplacido responded, "[u]nfortunately she can't be considered for home confinement since she is not in BOP

custody."[1] (Doc. No. 51-2 at 3-4.) On June 6, 2020, BOP Supervisory Attorney David Huband stated that Defendant "cannot be reviewed for suitability for placement on home detention" and "[w]hen she arrives at her designated BOP facility, staff will conduct a review of her suitability, pursuant to BOP policy and other applicable guidelines." (*Id.* at 6.) The Government does not specify the warden to whom the request for compassionate release should have been made and does not seek denial due to a failure to exhaust administrative remedies. Based on the above, the exhaustion requirement is futile and is therefore waived. *See United States v. Ma Sonia Arreoloa-Bretado*, Case No.: 3:19-cr-03410-BTM (S.D. Cal. May 15, 2020), ECF No. 44 ("This Court can envision no situation more futile than being required to petition to a BOP warden who does not exist."). Defendant has demonstrated a sufficient attempt at exhaustion and the unavailability of any further remedies to exhaust. *See, e.g.*, *United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020). Under these circumstances, the exhaustion requirement does not bar the court from considering the instant motion.

      A district court may reduce a previously imposed sentence and grant compassionate release if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(ii). Congress delegated to the U.S. Sentencing Commission the authority to decide what these "extraordinary and compelling reasons" would be. 28 U.S.C. § 994(t). The most recent version of the Sentencing Commission's Guidelines Manual is dated November 1, 2018. *Id.* The First Step Act was enacted on December 21, 2018. Pub. L. 115-391. The most recent guidelines thus do not address significant changes to this area of law. *See* U.S.S.G. § 1B1.13 cmt. n.1 (A)-(D). Other district courts have found, and this court agrees, that "the Commission lacks an applicable policy statement regarding when a

---

[1] On May 28, 2020, her co-defendant, was sentenced to time served and ordered to be released on June 10, 2020. (Doc. No. 50.)

judge can grant compassionate release" because it "never harmonized its policy statement with the [First Step Act]." *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa Oct. 8, 2019); *see also, e.g., United States v. Defendant(s)*, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020); *United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020) (reasoning that U.S.S.G. § 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants"); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681-82 (N.D. Cal. Nov. 25, 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. June 17, 2019). These courts have interpreted Congress' intent in passing the First Step Act, and specifically the amendment to § 3582(c)(1)(A), to have been to "increase the use of compassionate release" by entrusting the district courts with the discretion entrusted to the BOP Director. *Brown*, 411 F. Supp. 3d at 451. If inmates are permitted to move for compassionate release even when the BOP disagrees, it follows that Congress wanted "to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.* With this legislative intent in mind and without current guidelines from the Sentencing Commission, the court views the 2018 Guidelines as persuasive but not binding.

With respect to motions made by the BOP Director under § 3582(c)(1)(A), the 2018 Guidelines permit the courts to grant these motions "if, after considering the factors set forth in 18 U.S.C. § 3553(a), . . . the court determines that (1) (A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community; . . . and (3) the reduction is consistent with this policy statement."[2] U.S.S.G. § 1B1.13. A reduced sentence is consistent with the § 3553(a) factors. Defendant is a nonviolent offender who recently gave birth. She also has no prior record. Also, none of the remaining factors counsel against granting her compassionate release. Furthermore, Defendant argues that extraordinary and compelling reasons for a

---

[2] Though Defendant brought this motion on her own behalf, the court will analyze it under this framework.

modification exist because: (1) despite the court's recommendation, she did not have the opportunity to participate in the MINT program; (2) she has remained at GEO for most of her pretrial detention; (3) she was returned to GEO soon after giving birth and has not seen or held her infant child since; (4) the COVID-19 pandemic has led to lockdown of all federal facilities and a discontinuation of social visitation and programming; (5) transfers between BOP facilities after sentencing are indefinitely suspended; and (6) the court imposed a split sentence for her codefendant, Anahi Angulo, who will soon be placed in an RRC because of the structure of her sentence. (Mot. at 5-6.) Defendant also states that she is not asking for a reduction in the time imposed, but rather, a modification to her sentence so that she can receive the benefit of early release to an RRC or on home detention. (*Id.* at 8.) Defendant states, and the Government does not dispute, that "[i]f she had been transferred to a BOP facility after sentencing she would have already been released from prison to an RRC or on home detention." (*Id.*)

In opposition, the Government argues that the requested reduction is not consistent with applicable policy statements issued by the Sentencing Commission. (Doc. No. 53 at 5.) The Government argues that the policy statement related to medical conditions requires Defendant to show that she has either a terminal illness or a serious physical or medical condition that substantially diminishes her ability to provide self-care. (*Id.* (citing U.S.S.G. 1B1.13, cmt. n.1(A)).) The Government states, "the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction." (*Id.*) Additionally, the Government argues that the policy statement related to family circumstances requires Defendant to show either the death or incapacitation of the caregiver of the defendant's minor child. (*Id.* at 6 (citing U.S.S.G. § 1B1.13, n.1).) The Government notes that the Defendant acknowledges that her child's father is caring for the child. (*Id.*)

In reply, Defendant points out that the Government failed to address her argument that it is unfair that she did not have the opportunity to participate in the MINT program,

and currently does not have the opportunity for early release to home detention or an RPP merely by virtue of the fact that she is being held at a private facility rather than a BOP facility. (Doc. No. 54 at 4.) Defendant also argues that the Sentencing Commission has a policy statement that encourages alternatives to custody.[3] (*Id.* (citing U.S.S.G. § 5C1.1(c)(2)).)

As described above, the Sentencing Commission has no current policy statement incorporating the First Step Act. As discussed above, congressional intent – specifically with respect to § 3582(c)(1)(A) – supports providing federal courts discretion to determine whether § 3582(c) movants have established extraordinary and compelling reasons justifying compassionate release. Additionally, the 2018 Guidelines articulate criteria establishing extraordinary and compelling reasons to grant a § 3582(c) motion. U.S.S.G. § 1B1.13 cmt. n.1. The extraordinary and compelling reasons found above are consistent with the policy under criterion four, a catchall category, giving the BOP Director freedom to determine what is extraordinary and compelling on a case-by-case basis. U.S.S.G. § 1B1.13 cmt. n.1 (D). As discussed above, congressional intent supports extending this catchall category to federal judges reviewing motions filed by the inmates themselves.

For the foregoing reasons, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**. Her period of incarceration is reduced to time served. She shall be released from BOP custody upon the entry of this judgment.

IT IS SO ORDERED.

DATED: June 19, 2020

JEFFREY T. MILLER
United States District Judge

---

[3] In her reply, Defendant states that "her infant and three-year old sons are being cared for by a 16-year old teenager in Mexicali." (Doc. No. 54 at 4.)